JUDGE GRIESA    14 CV 2008

RECEIVED
MAR 21 2014
U.S.D.C. S.D.N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAYSELLE AMPONIN,                                    :

                              Plaintiff,             :        COMPLAINT
           -against-                                 :
                                                     :        JURY TRIAL
OLAYAN AMERICA CORP.,                                :        DEMANDED
                                                     :
                              Defendant.             :        ECF CASE
------------------------------------------------------------X

Plaintiff Jayselle Amponin ("Amponin" or "Plaintiff"), by her attorneys,

Berke-Weiss & Pechman LLP, complaining of Defendant Olayan America Corp.,

("Defendant" or "Olayan"), alleges:

## NATURE OF THE ACTION

1.      This action is brought to remedy discrimination on the basis of

pregnancy and gender in the terms, conditions, and privileges of employment

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as

amended by the Pregnancy Discrimination Act of 1978 ("Title VII"); the New

York State Human Rights Law, New York Exec. Law § 290, *et seq.* ("NYSHRL");

and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code

§§ 8-101, *et seq.*  This action also seeks to recover unpaid overtime and other

monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA"), and the New York Labor Law § 190 *et seq.* ("NYLL").

2.      Plaintiff was subjected to unlawful discrimination because of her

gender and her pregnancy that resulted in the unlawful termination of her

employment with Defendant.

3.      Defendant's conduct was knowing, malicious, willful and wanton

and/or showed a reckless disregard for Plaintiff, which has caused and

continues to cause Plaintiff to suffer substantial damages permanent harm to her professional and personal reputations, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over plaintiff's Title VII and FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1343.  The Court has supplementary jurisdiction over the claims brought under the NYSHRL, the NYCHRL, and the NYLL pursuant to 28 U.S.C. § 1332 and 1367.

5.      Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to plaintiff's claims occurred in this District.

6.      Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on June 29, 2011, alleging discrimination on the basis of sex and pregnancy.  Plaintiff received a Dismissal and Notice of Rights, which was issued on December 23, 2013 and is attached hereto as Exhibit A.

## PARTIES

7.      Plaintiff Jayselle Amponin resides in Philadelphia, Pennsylvania.

8.      Amponin was employed as an Administrative Asistant at Olayan from on or about March 1, 2008 until her termination on April 26, 2011. Amponin started out in the Accounting and Trading Department and later transferred to the Private Equity and Real Estate Department.  At all relevant times, she met the definition of an "employee" under all applicable statutes.

9.      Defendant Olayan America Corp. is a Delaware corporation which operates an investment company with offices at 505 Park Avenue, New York,

New York 10022.  At all relevant times, Defendant has met the definition of an "employer" under all applicable statutes.

## FACTS

### OLAYAN'S DISCRIMINATORY TREATMENT OF AMPONIN

10.    From March 2008 to December 2010, Amponin's duties at Olayan included assisting the Accounting and Trading departments and offering support to consultants in the development of in-house accounting systems.

11.    She mainly worked on trade settlements, calculations of the daily portfolio, and distribution of reports to Olayan's international offices in Athens, Riyadh, and London.  In addition to completing her assigned daily tasks, Amponin set time aside to assist project managers, developers, and system consultants from Charles River and Princeton Financial with Olayan's new system enhancements.

12.    Amponin was trained to offer backup support to all three members of the Accounting staff, as well as the Trading Room staff.  Moreover, often she would complete "reconciliation" work at the end of the workday.  This involved manually checking that trade transactions entered into the system matched generated reports, as well as verifying that the reports were complete.  Amponin ceased doing reconciliation work for this department by December 2010, when trading report distribution and control became the responsibility of accountants.

13.    In December 2010, Office Manager, Frank Amato ("Amato"), mentioned that the Private Equity and Real Estate department could use Amponin's help due to another employee leaving.  Throughout December 2010 and January 2011, she transitioned to this department and then started reporting to Vice President of Real Estate, Anthony Fusco ("Fusco").  About 90% of

3

Amponin's workload involved assisting Fusco, and she was responsible for various tasks, such as assisting auditors with year-end reviews, logging potential investment opportunities, and updating the new accounting system that was based in Europe, which entailed working with project managers and consultants located in Paris and London. In addition to the aforementioned duties, at least twice a week Amponin worked on system projects and reconciliation, which involved significant research and investigations into system "bugs." Amponin also was being trained to assist the Vice President of Private Equity. Additionally, she handled administrative work, such as answering phones, making travel arrangements, and creating expense reports.

14.     On or about March 26, 2011, Amponin discovered she was pregnant.

15.     On April 6, 2011, she was given a bonus of five thousand dollars ($5,000.00) and a three thousand dollar ($3,000.00) raise, increasing her annual salary to fifty-eight thousand dollars ($58,000.00).

16.     On or about April 10, 2011, Amponin spoke to Olayan's in-house counsel, Sung Whang ("Whang") about her pregnancy. Whang advised her to speak to Human Resources immediately and announce the pregnancy. Whang, who had been at Olayan for about six (6) years, also told Amponin he could not recall any pregnant employees during his tenure.

17.     On or about April 20, 2011, Amponin told Fusco she was pregnant. She planned to inform Human Resources of her pregnancy in the days following this conversation with Fusco, but she was ill and had to take a day off from work, so they did not have that discussion.

4

18.     On April 26, 2011, around 4:30 p.m. or 5:00 p.m., while Amponin was waiting for the elevator, Amato approached her and told her to go to his office upon her return from the mailroom. When Amponin returned, she walked into Amato's office, and found herself sitting there with Amato and Fusco. Amato told Amponin "it [was] not working out," and that her termination was effective immediately. When asked what she had done, Amato said: "We just feel like you don't care. You come in late. Your boss already told you about this.... We need somebody more reliable to be here."

19.     This was the first negative comment Amponin had received about her work at Olayan.

20.     During the year before receiving her raise, there were about four occasions when Amponin's bus from New Jersey was delayed making her late for work. After receiving the raise, there were one or two occasions when her bus was delayed and she was late. Amponin had discussed this problem with the head of the Private Equity and Real Estate Department, Camille Saba ("Saba"), on approximately two occasions, once in or about March 2011 and another time after receiving the raise. On both occasions, Saba mentioned Amponin's lateness, and she explained the problem, that buses on her route occasionally passed her stop if they were full and she could not anticipate when this might occur. Saba stated: "You need to try to get in earlier," and Amponin agreed to try.

21.     Later, Amponin was told that, on April 27, 2011, the day after she was terminated, some Olayan employees were commenting about her termination and speculating that she had been terminated due to her pregnancy.

5

22.     Upon information and belief, a high-level executive who was present stated, "What Olayan [had done *i.e.* terminating Amponin's employment] was right." Amponin also was told that several female employees later contacted Human Resources to inquire about the company's policy with respect to maternity leave.

23.     On May 27, 2011, Amponin received her last payroll payment from Olayan.

24.     Previously, in or about November 2010, Amponin had a conversation with a female employee by the name of Andrea Tanelli ("Tanelli"), which, in hindsight, indicated Olayan's negative attitude against pregnant employees. Tanelli raised concerns about Olayan's pregnancy policy, commenting that when she was hired in or about June 2010, she was asked: "How long have you been married? Do you have any kids?" Another employee who was present during the conversation, Laura, stated that in her fifteen to twenty years working at Olayan, she never encountered a pregnant employee. Tanelli worked as an assistant to Portfolio Manager Thomas Price ("Price"), for whom Amponin had worked briefly prior to her transition to the Private Equity and Real Estate department. According to Tanelli, during a conversation regarding the topic of pregnant employees, Price discussed what he would do if he had to interview a pregnant woman and stated: "I'm torn because I have a wife and kids, but at the same time, there's a business to run."

25.     Upon information and belief, Amponin was terminated from her employment because she is female and was pregnant, and the reasons given for her termination were pretextual.

6

## OLAYAN'S FAILURE TO PAY OVERTIME

26.     Amponin was a non-exempt employee whose job duties do not meet the requirements for any exemption under the Fair Labor Standards Act or New York Labor Law.

27.     From March 2008 to December 2010, Amponin's work hours were supposed to be from 9 a.m. to 5 p.m., but she initially worked from 9 a.m. to 6 p.m.  As her responsibilities and workload increased, she frequently worked past 6:30 p.m.  Although Amponin routinely worked over forty (40) hours per week, she was never paid for overtime; even though management was well aware of her work hours.

28.     Amponin worked for Fusco and his department throughout the early Spring of 2011, when she generally worked from 9 a.m. to 7 p.m.  Fusco and his boss were aware that she worked until at least 7 p.m., and occasionally later.

29.     From the moment Amponin started to work for the Private Equity and Real Estate department to the moment immediately preceding her termination, she had been working on a system project that was taking a significant amount of time to investigate, either due to a system glitch or a specific feature being "turned off." As a result, her reconciliation work registered as incomplete, until the consultants realized the problem was a "turned off" feature that was denying Amponin full access to the system.  The system glitch and its resulting errors required her to stay at work until at least 7 p.m. every day.

7

## FIRST CLAIM
### (Gender Discrimination In Violation of Title VII)

30.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 29 as if fully set forth herein.

31.    Defendant is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e.

32.    Defendant has discriminated against Plaintiff on the basis of her sex and pregnancy in violation of Title VII by denying her equal terms and conditions of employment, including but not limited to, unlawfully terminating Plaintiff's employment and denying her the opportunity to work in an employment setting free of unlawful discrimination.

33.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

34.    As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

## SECOND CLAIM
### (Gender Discrimination In Violation of New York State Human Rights Law)

35.    Plaintiff repeats and realleges paragraphs 1 through 34 of this complaint as if fully set forth herein.

8

36.     Defendant is an "employer" within the meaning of the New York State Human Rights Law.

37.     Defendant has discriminated against Plaintiff on the basis of her sex and pregnancy, in violation of the NYSHRL by denying her equal terms and conditions of employment, including but not limited to, unlawfully terminating Plaintiff's employment and denying her the opportunity to work in an employment setting free of unlawful discrimination.

38.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

39.     As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

### THIRD CLAIM
### (Gender Discrimination In Violation of the New York City Human Rights Law – Unlawful Termination)

40.     Plaintiff repeats and realleges paragraphs 1 through 39 of this complaint as if fully set forth herein.

41.     Defendant was an employer within the meaning of the NYCHRL.

42.     Defendant has discriminated against Plaintiff on the basis of her sex and pregnancy, in violation of the NYCHRL by denying her equal terms and conditions of employment, including but not limited to, unlawfully terminating

Plaintiff's employment and denying her the opportunity to work in an employment setting free of unlawful discrimination.

43.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

44.     As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation.

45.     Defendant's unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CLAIM
### (Unpaid Overtime Under the Fair Labor Standards Act)

46.     Plaintiff repeats and realleges paragraphs 1 through 45 of this complaint as if fully set forth herein.

47.     Defendant was required to pay plaintiff no less than one and one-half times the regular rate at which she was employed for all hours worked in excess of forty (40) hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, et seq.

48.     Defendant failed to pay plaintiff the overtime wages to which she was entitled under the FLSA.

10

49.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay plaintiff overtime wages.

50.     Due to defendants' violations of the FLSA, plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CLAIM
### (New York Labor Law – Unpaid Overtime)

51.     Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

52.     Under the NYLL and supporting New York State Department of Labor Regulations, defendant was required to pay plaintiff time and one half of her regular rate for all hours she worked in excess of forty (40).

53.     Defendant failed to pay plaintiff the overtime wages to which she was entitled under the NYLL.

54.     Defendant willfully violated the NYLL by knowingly and intentionally failing to pay plaintiff the correct amount of overtime wages.

55.     Due to defendants' willful violations of the NYLL, plaintiff is entitled to recover her unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a.     declaring that the acts and practices complained of herein are in violation of Title VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL;

11

b.      declaring that Defendant's violations of the FLSA and NYLL were willful;

c.      enjoining and permanently restraining these violations of Title VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL;

d.      directing such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

e.      directing Defendant to reinstate Plaintiff in the position Plaintiff would be in but for Defendant's discriminatory and unlawful acts, and to make Plaintiff whole for all earnings she would have received but for Defendant's discriminatory and unlawful treatment, including, but not limited to compensation and benefits including wages, commissions, non-discretionary bonuses, health insurance and other fringe benefits, pension, front-pay, and other lost employment benefits;

f.      directing Defendant to pay Plaintiff compensatory damages for, *inter alia*, mental anguish, emotional distress and humiliation;

g.      directing Defendant to pay Plaintiff punitive damages as provided by the NYCHRL;

h.      directing Defendant to pay Plaintiff damages for unpaid overtime wages;

i.      awarding Plaintiff liquidated damages;

j.      awarding Plaintiff such interest as is allowed by law;

k.      awarding Plaintiff the costs of this action together with reasonable attorneys' fees; and

l.      awarding such other and further relief as this Court deems just

and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury in this action.

Dated: New York, New York
        March 21, 2014

                        BERKE-WEISS & PECHMAN LLP

                        By: _____
                        Laurie Berke-Weiss
                        Jessica N. Tischler
                        488 Madison Avenue - 11th Floor
                        New York, New York 10022
                        (212) 583-9500
                        *Attorneys for Plaintiff*

# EXHIBIT A

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Jayselle Amponin<br>722 South Sheridan Street<br>Philadelphia, PA 19147 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
| --- | --- |

| [ ] | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
| --- | --- | --- |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 520-2012-00042 | Rodney Plummer,<br>Investigator | (212) 336-3767 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_____          12/23/13
Kevin J. Berry,                                    (Date Mailed)
District Director

Enclosures(s)

cc:  Attn:
Director of Human Resources
OLAYAN AMERICA
505 Park Avenue
New York, NY 10022

Laurie Berke-weiss, Esq.
BERKE-WEISS & PECHMAN LLP
488 MAdison Avenue
New York, NY 10022